674 So.2d 1277 (1996)
Ex parte FRANKLIN COUNTY DEPARTMENT OF HUMAN RESOURCES.
(Re Alan Rorer v. State of Alabama ex rel. Sandra Hillman).
1940662.
Supreme Court of Alabama.
January 12, 1996.
*1278 William Prendergast, Sharon E. Ficquette and Mary E. Pons, Asst. Attys. Gen., Department of Human Resources, for Petitioner.
John Pilati, Russellville, for Respondent Alan Rorer.
Jeff Sessions, Atty. Gen., and Robert M. Weinberg, Asst. Atty. Gen., for Amici Curiae 36 State boards, departments, and agencies.
PER CURIAM.
The Franklin County Department of Human Resources, after having been denied relief in the Court of Civil Appeals,[1] petitioned this Court for a writ of mandamus and for an immediate stay of an order issued by Judge John D. Jolly, of the 34th Judicial Circuit. Judge Jolly's order had held that the Franklin County Department of Human Resources was not constitutionally immune from a suit brought by Alan Rorer.
Alan Rorer had filed a counterclaim against the Department, alleging that the Department and certain fictitiously named Department employees had "maliciously, willfully and/or wantonly and/or without probable cause therefor, initiated [against him] a paternity action," which he says later ended with a directed verdict in his favor.
The facts are sufficiently set out by the Court of Civil Appeals in its opinion in Ex parte State Department of Human Resources, 674 So.2d 1274 (Ala.Civ.App.1995), in which that court denied the Defendant the same relief it requests here. We adopt and quote the Court of Civil Appeals' statement of those pertinent facts:
"In 1984 the Franklin County Department of Human Resources, on behalf of Sandra Hillman, filed an action against Alan Rorer, requesting that he be adjudicated the father of Hillman's minor child. Rorer was determined to be the father and began paying child support at that time.
"In 1991 Rorer requested that blood tests be ordered. His request was granted. The results of the tests excluded Rorer from being the biological father of the child. Following proceedings in the district court, Rorer was granted certain relief and, in effect, was found not to be the father of the child.
"The Department filed a notice of appeal to the circuit court for a trial de novo. Rorer filed a jury demand.
"Rorer subsequently filed a counterclaim, requesting that the circuit court enter an order directing the Department and the mother to return to him all child support payments he had previously made on behalf of the child and ordering the Department and the mother to pay all his costs, expenses, and attorney fees expended defending the matter. He further requested that the Department and the mother pay damages based on commencing and continuing a malicious, harassing proceeding after the blood tests clearly *1279 excluded him from being the biological father of the minor child.
"A jury trial was held in September 1992. Following the presentation of both parties' cases, the circuit court granted a directed verdict in favor of Rorer. His counterclaim was ordered severed and set for adjudication at a later date.
"The Department filed an appeal with this court, attacking a procedural matter. We affirmed the judgment of the trial court. State ex rel. Hillman v. Rorer, 629 So.2d 656 (Ala.Civ.App.1993). The supreme court denied the Department's petition for writ of certiorari. Ex parte State ex rel. Hillman, 629 So.2d 657 (Ala.1993).
"Rorer amended his counterclaim to include fictitious defendants X, Y, and Z (`individuals who decided or aided in the decision to pursue the paternity action against [him] after the blood test results were made available'). The counterclaim was again amended to allege that the defendants intentionally and in bad faith initiated a paternity action against him in violation of their own policy and/or under a mistaken interpretation of the law.
"The Department filed a motion to dismiss or, in the alternative, a motion for summary judgment, raising sovereign immunity as a defense.
"Following a hearing on the matter, the trial court denied the Department's motion, finding that the Department was not constitutionally immune from the suit and that `the amended counterclaim states a cause of action against the counter-defendants which is not due to be dismissed without further discovery.'
"The Department filed a petition for writ of mandamus in this court, requesting that we order the trial court to dismiss Rorer's counterclaim. It insists that the trial court erred in finding that the Department was not immune from suit."
674 So.2d at 1275.
In denying relief, the Court of Civil Appeals held, in part, as follows:
"The trial court could have reached this decision based on the rationale of Ex parte McCurley, 412 So.2d 1236 (Ala.1982). With the facts, or lack thereof, that it had before it, we find no clear abuse of discretion with the trial court's finding."
674 So.2d at 1276.

I.
We first address the issue whether the Franklin County Department of Human Resources is immune from suit pursuant to the provisions of Art. 1, § 14, Alabama Constitution of 1901.
This Court recognized in Mitchell v. Davis, 598 So.2d 801, 806 (Ala.1992), that a county department of human resources is considered to be a State agency for purposes of asserting the defense of sovereign immunity. Based on Mitchell, we hold that the Franklin County Department of Human Resources is a State agency. Article I, § 14, Alabama Constitution of 1901, provides that "the State of Alabama shall never be made a defendant in any court of law or equity." Under this provision, the State and its agencies have absolute immunity from suit in any court. Barnes v. Dale, 530 So.2d 770 (Ala. 1988). At this time, the only actual party named as a defendant in Rorer's counterclaim is the Franklin County Department of Human Resources; no particular employee of the Department has been named as a Defendant, although the complaint fictitiously names three of the Department's employees as defendants.[2]

II.
We now address the second issue in this case, that being whether this Court should adopt the so-called "collateral order doctrine" employed by the federal courts to permit review of rulings denying claims of sovereign immunity. The Department, joined by the attorney general, who has filed *1280 an amicus curiae brief, strongly urges this Court to adopt the collateral order doctrine in Alabama[3] and to treat the petition as an interlocutory appeal.
We have carefully examined the arguments made for adopting the collateral order doctrine, but we decline to adopt it at this time. We point out that Rule 5, Ala.R.App.P., provides an adequate remedy for a state agency or employee seeking review of a lower court order denying a claim of sovereign immunity. In this connection, we would also point out that "Rule 5 is a composite of [Fed.R.App.P.] 5, and 28 U.S.C. § 1292(b)." Comment to Rule 5, Ala.R.App.P.
Based on the foregoing, we decline to adopt the collateral order doctrine, but we issue the writ of mandamus. The Circuit Court of Franklin County is directed to dismiss Rorer's counterclaim against the Franklin County Department of Human Resources.
WRIT GRANTED.
HOOPER, C.J., and SHORES, HOUSTON, and INGRAM, JJ., concur.
COOK and BUTTS, JJ., concur specially.
MADDOX, J., concurs in the judgment and in Part I of the opinion and dissents from Part II of the opinion.
COOK, Justice (concurring specially).
I concur in the issuance of the writ of mandamus, but write separately to express my opinion why this Court should not adopt the "collateral order doctrine," which would allow an immediate appeal for State agencies or State employees acting within their public function where the agency or employee claims immunity and the trial court has rejected the claim. I do not believe it is necessary at this time to engraft onto our rules of procedure this right of immediate appeal. Any needed early review of immunity privileges can be provided by the mandamus procedure (Rule 21, Ala.R.App.P.), as in this case, or by Rule 5, Ala.R.App.P., which allows appeals by permission.
Alabama recognizes absolute immunity, commonly presented with regard to State agencies or public employees, granted under Art. I, § 14, Alabama Constitution of 1901, and qualified immunity, commonly referred to as discretionary function immunity. This Court has held that the question of immunity is a question of law for the courts to decide. Foreman v. State, [Ms. 1931068, March 31, 1995] ___ So.2d ___ (Ala.1995); Smith v. King, 615 So.2d 69, 72 (Ala.1993); Nance v. Matthews, 622 So.2d 297, 300 (Ala.1993). See Mitchell v. Davis, 598 So.2d 801, 806-07 (Ala.1992); White v. Birchfield, 582 So.2d 1085, 1087 (Ala.1991); Phillips v. Thomas, 555 So.2d 81, 84 (Ala.1989); and Grant v. Davis, 537 So.2d 7, 8 (Ala.1988). However, many questions of immunity are fact-driven and cannot be decided on motions to dismiss. Fact-driven immunity questions should be first decided in the trial court, with a developed record. Our mandamus procedure and permissive appeal procedure give us the opportunity to review immunity questions on a case-by-case basis, which is the better procedure, especially where we are not being overrun by questions of immunity in litigation involving State agencies or public employees.
I am not persuaded that we have reached the point in Alabama that we must, either because of the number of cases or for some other reason, search for other ways to deal with questions of immunity. The United States Supreme Court in its most recent interpretation of the collateral order doctrine, in Johnson v. Jones, 515 U.S. ___, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), held that a district court order denying a defendant a summary judgment on the basis of a claimed immunity was a fact-related determination that could not be immediately appealed. The United States Supreme Court appears to be refining the doctrine in such a manner as to come full circle to where that Court began, that is, to determining on a case-by-case basis, in evidence-sufficiency cases, whether a case is appropriate for appeal. Present Alabama practice allows this Court to make such a review and determination. This Court has not been presented with evidence that claims of immunity are falling on deaf *1281 ears, that petitions for permission to appeal are not being adequately considered, or that State agencies or employees are being forced into long and costly litigation in instances where the trial court should have accepted an immunity claim. In the absence of such evidence, to adopt a right of immediate appeal would be to solve a nonexistent problem. Justice Breyer, writing for the Supreme Court in Johnson, cogently pointed out practical problems appellate courts face in immunity cases that present evidence-sufficiency questions:
"[Q]uestions about whether or not a record demonstrates a `genuine' issue of fact for trial, if appealable, can consume inordinate amounts of appellate time. Many constitutional tort cases, unlike the simple `we didn't do it' case before us, involve factual controversies about, for example, intent controversies that, before trial, may seem nebulous....
". . . .
"... [A]n interlocutory appeal concerning this kind of issue in a sense makes unwise use of appellate courts' time, by forcing them to decide in the context of a less developed record, an issue very similar to one they may well decide anyway later, on a record that will permit a better decision."
515 U.S. at ___, 115 S.Ct. at 2158. While this Court should seek cures for ills, where no ill exists, no cure is needed. There is simply no evidence that our present practice is inadequate or that the adoption of the collateral order doctrine would substantially aid in properly and timely resolving immunity issues.
BUTTS, J., concurs.
MADDOX, Justice (concurring in the judgment and in Part I of the opinion; dissenting from Part II of the opinion).
I concur in the judgment directing the circuit court to dismiss Rorer's counterclaim against the Franklin County Department of Human Resources. I must respectfully dissent from the majority's refusal to adopt the collateral order doctrine.
As the majority states, the Franklin County Department of Human Resources, along with the attorney general, has asked this Court to treat its petition as an interlocutory appeal and has urged the Court to adopt the collateral order doctrine employed by the federal courts to determine whether to review orders denying claims of immunity.
The collateral order doctrine was most recently described in Johnson v. Jones, 515 U.S. ___, ___, 115 S.Ct. 2151, 2155, 132 L.Ed.2d 238 (1995), as applying to "special `collateral orders'" that "`finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated,'" quoting Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949). The Court further opined in Johnson:
"More recently, this Court has restated Cohen as requiring that the order `"[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment.'" Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. [139, 144, 113 S.Ct. 684, 688, 121 L.Ed.2d 605] (1993) (brackets in original) (quoting Coopers & Lybrand v. Livesay, 437 U.S. 463, 468 [98 S.Ct. 2454, 2458, 57 L.Ed.2d 351] (1978))."
Johnson v. Jones, 515 U.S. at ___, 115 S.Ct. at 2155. Even though this Court has authorized procedures for reviewing certain interlocutory orders (See Rules 5 and 21, A.R.App.P.), it has not addressed the question of expanding the class of reviewable orders to include those where the State or one of its agencies or employees is denied sovereign immunity and where there is no dispute as to the material facts and only a question of law is presented.
Art. I, § 14, Alabama Constitution of 1901, provides that "the State of Alabama shall never be made a defendant in any court of law or equity." This Court has held on many occasions that the State and its agencies possess absolute immunity from suit. Nance v. Matthews, 622 So.2d 297, 299 (Ala.1993); *1282 Phillips v. Thomas, 555 So.2d 81, 83 (Ala. 1989); Hickman v. Dothan City Bd. of Educ., 421 So.2d 1257, 1258 (Ala.1982); Gill v. Sewell, 356 So.2d 1196, 1198 (Ala.1978); Milton v. Espey, 356 So.2d 1201, 1202 (Ala. 1978).
"In determining whether state officers and employees possess absolute immunity, this Court considers the nature of the action and the relief sought. Phillips, supra; DeStafney v. University of Alabama, 413 So.2d 391, 395 (Ala.1981); Milton, 356 So.2d at 1202. In an action against a state officer or employee that is, in effect, an action against the State, the officer or employee is entitled to absolute immunity. Phillips, supra; Barnes v. Dale, 530 So.2d 770, 781 (Ala.1988); DeStafney, 413 So.2d at 393."
Nance v. Matthews 622 So.2d 297, at 300.
The attorney general, in his amicus curiae brief filed on behalf of the State and 36 State boards, departments, and agencies, contends that this Court should permit interlocutory appeals, as of right, from trial court orders denying immunity, especially where only a question of law is presented, with any factual disputes being resolved in favor of the nonmoving party. In arguing that the denial of a claim of immunity should be immediately appealable, the attorney general relies heavily on Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. 139, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993).[4] In Puerto Rico Aqueduct, the United States Supreme Court held that the denial of a motion to dismiss asserting sovereign immunity under the Eleventh Amendment was immediately appealable under the collateral order doctrine. The attorney general says that the immunity granted to States by the Eleventh Amendment to the Constitution of the United States is precisely analogous to the immunity granted by Art. I, § 14, Alabama Constitution of 1901, and that the same principles of law that guide federal courts in applying the collateral order doctrine should guide us in determining whether to adopt the collateral order doctrine in Alabama, and if we adopt it, in determining how to apply it. I agree. I would adopt the collateral order doctrine in cases involving claims of sovereign immunity, and, in addition, I would establish the following criteria for determining when, and under what circumstances, to apply it.
In Johnson v. Jones, the Supreme Court of the United States, after noting that the United States Courts of Appeals had held different views about the immediate appealability of pre-trial "evidence sufficiency" claims made by public officials, said that three background principles guided the Court in deciding the issue of immediate appealability: 1) The United States Supreme Court stated that interlocutory appeals are the exception, not the rule, that too many interlocutory appeals can cause harm by making it more difficult for trial judges to do their basic job of supervising trial proceedings and could threaten those proceedings with delay, adding costs and diminishing coherence, and risking additional and unnecessary appellate court work, either when appeals are brought that present less developed records or when courts get appeals that, had the trials simply proceeded, would have turned out to be unnecessary;[5] 2) The United States Supreme Court stated that to be appealable, a collateral order must have conclusively determined the disputed question, must have resolved an important issue completely separate from the merits of the action, and must have been effectively unreviewable on appeal from a final judgment; that is, that a failure to review the order immediately may well cause significant harm; and 3) The United States Supreme Court said that appealability applies when the defendant is a public official *1283 asserting a defense of qualified immunity and the issue presented on appeal concerns not which facts the parties might be able to prove, but, rather, whether certain given facts show a violation of clearly established law.
The question of immunity from suit under § 14 is a question of jurisdiction. Aland v. Graham, 287 Ala. 226, 229, 250 So.2d 677, 678 (1971). The Legislature cannot waive the State's immunity, and the United States Supreme Court has held that the immunity from suit conferred by the Eleventh Amendment to the United States Constitution is jurisdictional and may be raised at any time. See, Alabama v. Pugh, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978); Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). There are, of course, recognized exceptions to the constitutional prohibition of suits against the State when a State official is sued for injunctive or declaratory relief. See, e.g., Gunter v. Beasley, 414 So.2d 41 (Ala.1982).
This Court has held that immunity is a question of law for the courts to decide, and I believe that the collateral order doctrine would help to get a speedy, inexpensive, and just determination of sovereign immunity issues. Foreman v. State, [Ms. 1931068, March 31, 1995] ___ So.2d ___ (Ala.1995); Smith v. King, 615 So.2d 69, 72 (Ala.1993); Nance v. Matthews, 622 So.2d 297, 300 (Ala. 1993). See Mitchell v. Davis, 598 So.2d 801, 806-07 (Ala.1992); White v. Birchfield, 582 So.2d 1085, 1087 (Ala.1991); Phillips v. Thomas, 555 So.2d 81, 84 (Ala.1989); and Grant v. Davis, 537 So.2d 7, 8 (Ala.1988). Sometimes fact-specific questions of immunity present questions of law that should be decided by a court at the earliest possible moment. In Aland v. Graham, 287 Ala. 226, 229, 250 So.2d 677, 678 (1971), this Court said, "[A] trial court or an appellate court should, at any stage of the proceedings, dismiss a suit when it becomes convinced that it is a suit against the State and contrary to Sec. 14 of the Constitution." In Aland, the question of immunity was the threshold issue. Cf. Gunter v. Beasley, 414 So.2d 41, 48 (Ala.1982), where the Court said, "whether this suit is barred by Article 1, Section 14, of the Alabama Constitution" was actually "the threshold issue."
One of the reasons for the collateral order doctrine is that sometimes "review after trial would come too late to vindicate one important purpose of `qualified immunity'namely, protecting public officials, not simply from liability, but also from standing trial." Johnson v. Jones, 515 U.S. at ___, 115 S.Ct. at 2155, citing Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The difficulty in applying the collateral order doctrine, of course, is in resolving the "separability" question, i.e., determining whether the "qualified immunity" issue is "completely separate from the merits of the action." In Johnson v. Jones, the United States Supreme Court quoted from the conclusion reached by the Court in Mitchell, writing:
"`[I]t follows from the recognition that qualified immunity is in part an entitlement not to be forced to litigate the consequences of official conduct that a claim of immunity is conceptually distinct from the merits of the plaintiff's claim that his rights have been violated.' Mitchell [472 U.S. at 527-28, 105 S.Ct. at 2816] (emphasis added).
"And, the [Mitchell] Court said that this `conceptual distinctness' made the immediately appealable issue `separate' from the merits of the plaintiff's claim, in part because an
"`appellate court reviewing the denial of the defendant's claim of immunity need not consider the correctness of the plaintiff's version of the facts, nor even determine whether the plaintiff's allegations actually state a claim. All it need determine is a question of law: whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions or, in cases where the district court has denied summary judgment for the defendant on the ground that even under the defendant's version of the facts the defendant's conduct violated clearly established law, whether the law clearly proscribed the actions the defendant claims he took.' [472 U.S.] at 528 [105 S.Ct. at 2816] (footnote omitted)." *1284 515 U.S. at ___, 115 S.Ct. at 2156. I realize that Rule 5, Ala.R.App.P., is, as stated in the comments to that Rule, "a composite of [Fed. R.App.P.] 5, and 28 U.S.C. § 1292(b)," and that Rule 5 can be used, and has been used, to review questions of sovereign immunity, but I would liberalize Rule 5 to provide a State board, department, or agency with the right to appeal from orders denying claims of immunity without having to get permission from either the trial court or an appellate court.
To see how other jurisdictions treat cases like this one, I have cursorily reviewed the law in other states that have considered the question of immediate appealability of orders denying claims of immunity. My review reveals that the States of Arizona, Arkansas, Florida, and Maine have adopted the right of immediate appeal from the denial of immunity. See Henke v. Superior Court, 161 Ariz. 96, 775 P.2d 1160 (Ariz.App.1989); Virden v. Roper, 302 Ark. 125, 788 S.W.2d 470 (1990); Tucker v. Resha, 648 So.2d 1187 (Fla.1994) (order denying summary judgment based upon claim of qualified immunity subject to interlocutory review to the extent that order turns on issue of law); Creamer v. Sceviour, 652 A.2d 110, 112 (Me.1995); Organes v. Town of Steuben, 644 A.2d 1047 (Me.1994) (employer immunity under Workers' Compensation Act); Smith v. Yankee Construction Corp., 625 A.2d 904 (Me.1993) (same); Ryan v. City of Augusta, 622 A.2d 74 (Me. 1993) (qualified immunity from action under 42 U.S.C. § 1983); and Polley v. Atwell, 581 A.2d 410 (Me.1990) (discretionary function immunity under Maine Tort Claims Act).
Maryland, Massachusetts, and Minnesota have adopted the right of immediate review as of right from the denial of immunity. See Artis v. Cyphers, 100 Md.App. 633, 642 A.2d 298 (1994), judgment affirmed by Artis v. Cyphers, 336 Md. 561, 649 A.2d 838 (1994) (to the extent the immunity asserted can be determined as a matter of law, an immediate appeal will lie); Breault v. Chairman of Bd. of Fire Com'rs of Springfield, 401 Mass. 26, 513 N.E.2d 1277 (1987); McGowan v. Our Savior's Lutheran Church, 527 N.W.2d. 830 (Minn.1995); McGovern v. City of Minneapolis, 475 N.W.2d 71 (Minn.1991); Martin v. Spirit Mountain Recreation Area Authority, 527 N.W.2d 167 (Minn.App.1995); Martinez v. Minnesota Zoological Gardens, 526 N.W.2d 416 (Minn.App.1995); and S.L.D. v. Kranz, 498 N.W.2d 47 (Minn.App.1993).
New Hampshire, New Mexico, and North Carolina have adopted the collateral order doctrine. See Richardson v. Chevrefils, 131 N.H. 227, 552 A.2d 89 (1988); Oldfield v. Benavidez, 116 N.M. 785, 867 P.2d 1167 (1994); Carrillo v. Rostro, 114 N.M. 607, 845 P.2d 130 (1992) (adopting common law writ of error as "procedural device" for invoking collateral order doctrine when remedy by appeal is "inadequate": "[W]e adopt the Supreme Court's collateral order doctrine as a matter of sound judicial administration, the salutary effects of which are not limited to cases involving federally created claims or defenses," 114 N.M. at 618 n. 10, 845 P.2d at 141 n. 10); Corum v. University of North Carolina, 330 N.C. 761, 413 S.E.2d 276 (1992); Hawkins v. State, 117 N.C.App. 615, 453 S.E.2d 233 (1995); Colombo v. Dorrity, 115 N.C.App. 81, 443 S.E.2d 752 (1994); Clark v. Red Bird Cab Co., 114 N.C.App. 400, 442 S.E.2d 75 (1994); Minneman v. Martin, 114 N.C.App. 616, 442 S.E.2d 564 (1994); Slade v. Vernon, 110 N.C.App. 422, 429 S.E.2d 744 (1993); Northwestern Financial Group, Inc. v. County of Gaston, 110 N.C.App. 531, 430 S.E.2d 689 (1993); and Hickman v. Fuqua, 108 N.C.App. 80, 422 S.E.2d 449 (1992).
Finally, Ohio, Vermont, Wisconsin, and Wyoming have adopted the doctrine. See Larson v. Mullett, No. 94-CA-14, 1994 WL 728579 (Ohio App., Dec. 19, 1994) (unpublished); Murray v. White, 155 Vt. 621, 587 A.2d 975 (1991); Barnhill v. Board of Regents of the UW System, 166 Wis.2d 395, 479 N.W.2d 917 (1992); Baxter v. Wisconsin Dep't of Natural Resources, 165 Wis.2d 298, 477 N.W.2d 648 (Wis.App.1991); Abell v. Dewey, 870 P.2d 363 (Wyo.1994); and Park County v. Cooney, 845 P.2d 346 (Wyo.1992).
The United States Supreme Court's recent opinion in Johnson v. Jones is entirely consistent with the decisions from all of these States that have adopted the collateral order doctrine allowing immediate appeals from the denial of immunity for public officers and *1285 institutions. What is appealable under that doctrine in every one of these jurisdictions is always a purely legal question, not a factual dispute. I note that in Alabama "[t]he question whether a public official is entitled to immunity is one to be decided as a matter of law." Lightfoot v. Floyd, 667 So.2d 56 (Ala. 1995) (citing White v. Birchfield, 582 So.2d 1085 (Ala.1991), and Grant v. Davis, 537 So.2d 7 (Ala.1988)). All the collateral order doctrine does is recognize the gravity of the consequences that flow from the failure to determine the immunity question at the earliest practicable opportunity. This Court has noted the gravity of those consequences:
"As the United States Court of Appeals for the Eleventh Circuit observed in Rich v. Dollar, 841 F.2d 1558 (11th Cir.1988): `The entitlement not to stand trial or face the other burdens of litigation provided by the doctrines of absolute immunity and qualified immunity is effectively lost if a case is erroneously allowed to go to trial. Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).'"
Barnes v. Dale, 530 So.2d 770, 780 (Ala.1988). Under the collateral order doctrine, the purely legal question whether a defendant is entitled not to stand trial and not to suffer the other burdens of litigation is the only question over which appellate courts are being asked to assume jurisdiction.
I have reviewed the principles of law relating to the collateral order doctrine as those principles are stated in Cohen v. Beneficial Industrial Loan Corp. and Puerto Rico Aqueduct & Sewer Authority and as they are most recently stated in Johnson v. Jones. I conclude that an immediate appeal in this case would provide the Department a timely resolution of the Department's immunity; that is an important issuea controlling issue completely separate from the merits of the action.
Therefore, I think the Court should adopt the collateral order doctrine so as to allow an appeal from a denial of a claim of immunity, and then treat the Department's mandamus petition as an appeal permitted under that doctrine. I must respectfully dissent from the refusal to adopt the collateral order doctrine. However, because I agree that the Department is entitled to § 14 immunity as to Rorer's counterclaim, I concur in the issuance of the writ.
NOTES
[1] The Department had initially, on July 28, 1994, filed in the Court of Civil Appeals a document styled "Petition To Appeal from an Interlocutory Order or for Alternative Writ of Mandamus or Other Prohibition or other Extraordinary Writ or Petition to Appeal." In that petition, it sought the same relief that it now seeks in this Court. The Court of Civil Appeals denied the petition on February 3, 1995. See, Ex parte State Department of Human Resources, 674 So.2d 1274 (Ala. Civ.App.1995).
[2] Rorer amended his counterclaim to fictitiously name Department employees X, Y, and Z. He alleged that these employees had intentionally and in bad faith initiated the paternity action against him in violation of the Department's own policy and/or under a mistaken interpretation of the law. The Department has not objected to Rorer's use of Rule 9(h), Ala.R.Civ.P., which relates to fictitious party practice.
[3] The attorney general states in his brief that 36 boards, departments, and agencies of the State of Alabama join him in his request that this Court adopt the collateral order doctrine.
[4] Johnson v. Jones was decided after this case was orally argued in this Court. The attorney general, in a letter brief, calls our attention to it as the latest case from the United States Supreme Court dealing with the collateral order doctrine.
[5] The United States Supreme Court did recognize that there could be some "countervailing benefits" to an interlocutory appeal, such as avoiding injustice by quickly correcting a trial court error. By authorizing appeals of orders that are made final under the provisions of Rule 54(b), Ala.R.Civ.P., and authorizing appeals by permission under Rule 5, Ala.R.App.P., this Court has recognized the value of quick resolution of issues in certain cases. However, the fact that those procedures are not always sufficient or effective is demonstrated by this case.