**Sharon E. SOLTANI**

v.

**Douglas A. SMITH, personally; Douglas A. Smith, Chief Deputy Treasurer; Georgie Thomas, personally; Georgie Thomas, State Treasurer; State of New Hampshire Treasury Department.**

Civ. No. 92–142–SD.

United States District Court,
D. New Hampshire.

Feb. 4, 1993.

Tony F. Soltani, Chichester, for plaintiff.

Susan Geiger, Asst. Atty. Gen., Concord, for defendants.

## ORDER

DEVINE, Senior District Judge.

This order addresses the motion for summary judgment filed on September 1, 1992, by defendants Douglas A. Smith, as an individual and as Chief Deputy Treasurer, State of New Hampshire Treasury Department; Georgie Thomas, as an individual and as State Treasurer; and the State of New Hampshire Treasury Department.

### 1. Factual Background

In December of 1990, plaintiff was an employee of the Treasury Department in the position of Account Clerk III. Plaintiff's employment in this position continued through September 21, 1992.

On August 31, 1990, the position of Accounting Technician was posted in-house within the Treasury Department. Plaintiff applied for the position within the time allotted.

Diane Townsend had been employed at the Treasury Department at the level of Computer Operator I until being "bumped" by Treasury Department employee Bob Parker, who had previously been given notice that he would be laid off. Diane Townsend also applied for the position of Accounting Technician. In her affidavit, plaintiff states that "Diane Townsend is related to Defendant Thomas." Plaintiff's Affidavit in Support of Plaintiff's Objection to Motion for Summary Judgment ("Plaintiff's Affidavit") at ¶ 8.

On or around October 1990, defendant Thomas announced to all applicants for the position that it was downgraded to Account Clerk III and would be given to Diane Townsend. The position was not permanently reclassified until the summer of 1992. At no time did either defendant Smith or defendant Thomas ask plaintiff to withdraw her application for the position, nor did plaintiff ever withdraw said application.

In her affidavit, plaintiff states that after repeated requests she was allowed to take the certification exam required for the position, and that on December 13, 1990, she received a notice from the State of New Hampshire Department of Personnel informing her that she was the only applicant certified for the position. Plaintiff's Affidavit at ¶ 11.

On December 19, 1990, plaintiff filed an appeal with the State of New Hampshire Personnel Appeals Board (PAB). Plaintiff's Affidavit at ¶ 13; Plaintiff's Request For Hearing For Denial Of Promotion, dated December 19, 1990 (Attachment 5, at 1–3, to Plaintiff's Memorandum in Support of Plaintiff's Objection to Defendant's Motion for Summary Judgment ("Plaintiff's Objection Memorandum")). By letter from plaintiff's counsel Tony F. Soltani, Esquire, dated December 19, 1990, plaintiff informed defendant Smith that she had filed the PAB appeal. Plaintiff's Objection Memorandum, Attachment 2, at 1. This letter contained, inter alia, the following statements:

Simultaneous to this particular appeal, I wish to bring to your attention my request for adjustment and correction in the following areas:

1—Sharon Soltani was unlawfully denied a promotion.

2—Sharon Soltani's position at the treasury is erroneously classified.

3—The position of account[ing] technician was illegally classified.

*Id.* By letter from plaintiff's counsel to defendant Thomas dated January 2, 1991, plaintiff purportedly enclosed a copy of the aforementioned letter to defendant Smith. *See* Plaintiff's Objection Memorandum, Attachment 3. By letter from plaintiff's counsel dated January 10, 1991, plaintiff informed State of New Hampshire Director of Personnel Virginia Vogel that defendant Thomas "refus[ed] adjustment, correction or any effort aimed at resolution of the [matter of the Treasury Department's failure to promote plaintiff to the position]", Plaintiff's Objection Memorandum, Attachment 4, at 1, and described in detail the elements of plaintiff's disagreement with the Treasury Department over this matter. *See id.* at 1–4.

In his affidavit, defendant Smith states, I met with the Plaintiff, Sharon Soltani and Defendant, Georgie Thomas, sometime after receiving notice that the Plaintiff had appealed her non-selection for the position of accounting technician. The sole purpose for the meeting was to determine why the Plaintiff filed the appeal. Neither Defendant Thomas nor I could understand why the appeal had been filed in view of the fact that the Plaintiff had been told the reasons why the position was de-posted.

Affidavit of Douglas Smith at ¶ 2. In her affidavit, defendant Thomas states,

After learning that the Plaintiff had appealed her non-selection for the de-posted position of Accounting Technician, I met with her and Chief Deputy State Treasurer Douglas Smith. The sole purpose of this meeting was to determine why Ms. Soltani had filed her appeal. I did not understand why she had pursued the appeal after I had explained that the position was posted in error and that deposting had occurred to keep Treasury Department employees from being laid off or bumped from their positions. The Plaintiff did not offer any adequate explanation for the appeal at that time.

Affidavit of Georgie Thomas at ¶ 8.

As the foregoing excerpts of defendants' affidavits confirm, after defendant Thomas received notice of the PAB appeal, plaintiff was called into defendant Thomas's office to be privately questioned by defendant Thomas and defendant Smith. According to plaintiff's account, during this encounter, defendant Thomas

scolded me in a shouting voice and pounded her fist on her desk. I was visibly shaking and crying and was told to leave Defendant Thomas' office.

Plaintiff's Affidavit at ¶ 16.

In her affidavit, plaintiff states that

[o]n or around January 1991, Defendant Smith spoke with me about my appeal on a weekend when I was working overtime. He stated that they were required to check the recall list before posting the ... position which they had not done. *He stated that he and Defendant Thomas rushed to post the ... position in order to keep Diane Townsend, a relative of Defendant Thomas, employed. He continued on to state that at that point they were 'outside the rules' and did not follow them after that. He asked me to drop my appeal because he was sure Defendant Thomas was not going to give me what I wanted.*

Plaintiff's Affidavit at ¶ 17 (emphasis added).

Plaintiff states that on or about January 1991, defendant Smith told her to remain on the premises after working hours. According to plaintiff, defendant Smith

kept me over one hour, questioning me about my appeal and pressuring me to drop the appeal. He stated that if I pursued the appeal that things would not be nice and that Defendant Thomas was of the opinion that I had 'stabbed her in the back'; he also stated that I didn't stand a 'chance in hell of winning' and that I should drop it now. He also

warned me Thomas would hold a grudge. Finally I was allowed to leave, again visibly upset and shaken.

Plaintiff's Affidavit at ¶ 18. Defendants deny these allegations, except to the extent that they admit that on this occasion,

Defendant Smith asked the Plaintiff to speak with him privately at a time when other employees had left the premises and that during this conversation Defendant Smith stated that he felt he's been stabbed in the back by her actions and he assumed Defendant Thomas felt the same way.

Defendant's Answer to Amended and Supplemented Complaint at ¶ 18.

Plaintiff further states that

[o]n or about January, 1991 while in the performance of my duties in a work area of the office, Defendant Thomas shouted at me to 'go ahead and hit me in the back', in the presence of other department employees. I was embarrassed and humiliated.

Plaintiff's Affidavit at ¶ 19.

On May 22, 1991, plaintiff attended a preliminary hearing of the PAB, at which defendant Smith and plaintiff's counsel were also in attendance. Plaintiff states that on this day defendant Smith ordered her to remain after working hours, began to question her about the appeal, and advised her "that things were going to get 'sticky.'" Plaintiff's Affidavit at ¶ 21.

Plaintiff alleges that on or about May 1991,

while performing my work duties Defendant Smith singled me out for a scolding, he advised me that I had been on break too long and that I should watch my step since I was being scrutinized and watched.

Plaintiff's Affidavit at ¶ 22. Defendants deny this, while admitting that on this occasion defendant Smith advised plaintiff that she had been on break too long. Defendants' Answer to Amended and Supplemented Complaint at ¶ 22.

On March 16, 1992, plaintiff filed a complaint with this court, commencing the instant action. On March 23, 1992, plaintiff was given a copy of a written warning by defendant Thomas. On March 24, 1992, plaintiff found a sealed envelope bearing her name on her desk. The envelope contained yet another copy of the same warning. The warning accused plaintiff of leaving a machine, which defendant Thomas identifies in her affidavit as "check signing equipment", Affidavit Of Georgie Thomas at ¶ 9, and a signature plate, in an unsecured manner overnight on March 18, 1992. Plaintiff's Affidavit at ¶ 35. Defendant Thomas did not ask plaintiff whether she had left the machine on or whether she had left the signature plate out.

Plaintiff was not the last person to leave the office on March 18, 1992, and the vault was still open when she left. Plaintiff states that Diana Watson, the employee who discovered the machine on, was not the first person in the office on the morning of March 19, 1992. Plaintiff's Affidavit at ¶ 37. Other employees of the Treasury Department have the authority and access to use the same machine and to obtain the signature plates during plaintiff's presence or absence. Plaintiff states that

[i]t was explained to me that to ensure the signature plate was in the vault and the machine was turned off was the responsibility of both myself and Diana Watson.

Plaintiff's Affidavit at ¶ 40. Diana Watson was not given either a verbal warning or a written warning. During the period from the beginning of plaintiff's employment at the Treasury Department until March 23, 1992, only one employee had received a written warning. That written warning followed several verbal warnings.

According to Anthony D'Angelantonio, a law clerk at the law office of plaintiff's counsel, an informal meeting regarding the warning was held on March 30, 1992, at the office of the New Hampshire Attorney General. D'Angelantonio Affidavit at ¶¶ 2–3. According to Mr. D'Angelantonio, in attendance at the meeting were himself, plaintiff's counsel, plaintiff, defendant Smith, defendant Thomas, and defendants' counsel Assistant Attorney General Susan S. Geiger. Id. at ¶ 2. By D'Angelantonio's account, during the meeting

Defendants Thomas and Smith acknowledged that no factual investigation was conducted prior to the issuance of the warning. Thomas acknowledged she had no personal knowledge that Soltani was the last person to use the machine in question. Nor were there any eyewitnesses who could corroborate this fact. Thomas and Smith acknowledged that no other employee was ever asked whether they had used the machine on the dates in question.

*Id.* at ¶ 4.

On March 26, 1992, plaintiff received a letter from defendant Thomas regarding the importance of the electronic key cards used at the Treasury Department. On the previous day, plaintiff had left her key card in the ladies' room for a brief time. Other employees have either lost their key cards or misplaced them for extended periods of time. Plaintiff states that no other employee was given such a letter in response to such conduct. Plaintiff's Affidavit at ¶ 45.

Plaintiff states that she was receiving psychiatric counseling during the time of the key card letter. *Id.* at ¶ 46. Plaintiff further states,

I was tearful during those days and was extremely depressed and nervous with my limbs shaking. I have become increasingly anxious since that time.

Finally, on my Doctor's advice I only worked half-days during the week ending April 3rd, 1992.

*Id.* at ¶ 46.

On May 5, 1992, plaintiff's supervisor at the Treasury Department informed her of a new policy requiring the submission of leave slips for any tardiness. At this time plaintiff was told that an employee had reported that plaintiff had arrived late for work one morning several weeks earlier. Plaintiff states that at this time her supervisor said defendant Thomas had requested that plaintiff put in a leave slip for the assumed lateness. Plaintiff's Affidavit at ¶ 51. Plaintiff further states, "After investigating the situation my supervisor realized I had not been late therefore no leave slip was required." *Id.*

Plaintiff states that on May 5, 1992, she was also told to write down on her calendar the time she arrived for work each day. Plaintiff's Affidavit at ¶ 52. Plaintiff further states that (1) no other employee was required to keep such a record of the time arrived for work, *id.*, and (2) at this time she was also informed by her supervisor that other employees were allowed to report lateness but that she was not allowed to report any lateness by others, *id.*

Plaintiff resigned her position of Account Clerk III on September 21, 1992. Plaintiff states that she resigned "[d]ue to the extreme duress and constant tension that I was experiencing." Plaintiff's Affidavit at ¶ 66.

## 2. Discussion

### a. Summary Judgment

Summary judgment shall be rendered for the moving party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P.

Within this context, " 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party," *United States v. One Parcel of Real Property*, 960 F.2d 200, 204 (1st Cir.1992) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)), and " 'material' means that the fact is one 'that might affect the outcome of the suit under the governing law,' " *id.*

Further, when a court considers a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson, supra* 477 U.S. at 255, 106 S.Ct. at 2513.

### b. Count I: Claims under 42 U.S.C. § 1983

#### (1) Eleventh Amendment Immunity

##### (i) § 1983 Claims Against Treasury Department

■ "[A]bsent waiver by the State or valid congressional override, the Eleventh

Amendment bars a damages action against a State in federal court." *Kentucky v. Graham,* 473 U.S. 159, 169, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985). Plaintiff does not contend, nor does the court find, that the State of New Hampshire has waived its Eleventh Amendment immunity with respect to her claims under section 1983. Further, "[t]he [United States Supreme] Court has held that § 1983 was not intended to abrogate a State's Eleventh Amendment immunity." *Id.* at 169 n. 17, 105 S.Ct. at 3107 n. 17 (citing *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), and *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)). Therefore, the court finds that the Eleventh Amendment bars plaintiff's section 1983 claims against defendant Treasury Department.[1]

#### (ii) § 1983 Claims Against Smith and Thomas in their Official Capacities

■ "As long as the government entity [of which the officer is an agent] receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham, supra,* 473 U.S. at 166, 105 S.Ct. at 3105. On March 23, 1992, plaintiff served process on State Treasurer (defendant) Thomas, on Attorney General John P. Arnold as attorney for the Governor, and on Secretary of State William Gardner. Summonses, filed April 2, 1992 (document no. 2). The court finds such service sufficient to have provided defendant Treasury Department with notice of the instant action and an opportunity to respond thereto. Accordingly, the court treats plaintiff's section 1983 claims against defendants Smith and Thomas in

their official capacities as claims against defendant Treasury Department. As stated *supra,* such claims are barred by the Eleventh Amendment.[2]

#### (2) Pruning the Complaint

In Count I of the complaint, plaintiff alleges that

> Defendants ... either acted ... or knowingly omitted to act to protect plaintiff from continuing deprivation of her right to enjoy Freedom of Speech, movement, association and assembly, to petition her government for redress [of] grievances, to be free from unreasonable searches and seizures, to enjoy privacy, to be free from involuntary servitude, and to be free from deprivation of life, liberty and property without due process of law all in violation of Constitution and Laws of the United States and of 42 USC S.1983.

Complaint at ¶ 18. Despite plaintiff's litany of alleged constitutional violations, upon review of plaintiff's filings, including a review of the factual allegations contained in the complaint, the court determines that, in reality, Count I of the complaint only purports to state three types of section 1983 claims: (1) claims alleging the violation of plaintiff's First Amendment right to freedom of speech; (2) claims alleging the violation of plaintiff's Fourteenth Amendment protection against the deprivation of property without due process of law; and (3) claims alleging the violation of plaintiff's Fourteenth Amendment protection against the deprivation of liberty without due process of law.

#### (3) The Elements of a Section 1983 Claim

To establish a violation of section 1983, the plaintiff must prove (1) that " 'the con-

---

1. Plaintiff concedes that "[a]ll remedies are barred against the Defendant State of New Hampshire Treasury Department except claims based under 42 U.S.C. 1988." Memorandum of Law in Support of Plaintiff's Objection to Defendant's Motion for Summary Judgment ("Plaintiff's Objection Memorandum") at 30.

2. Plaintiff concedes that "[a]ll damage awards are barred against Defendants Georgie Thomas and Douglas Smith in their official capacity

except claims based under 42 U.S.C. 1988." Plaintiff's Objection Memorandum at 30.

However, it is clear that "the Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal liability' on state officials under § 1983." *Hafer v. Melo,* —— U.S. ——, ————, 112 S.Ct. 358, 364–65, 116 L.Ed.2d 301 (1991). Therefore, plaintiff's section 1983 claims against defendants Smith and Thomas in their individual or personal capacities are not barred by the Eleventh Amendment.

duct complained of' ... deprived the complaining party 'of rights, privileges or immunities secured by the Constitution or laws of the United States'" and (2) that such conduct " 'was committed by a person acting under color of state law'". *Martinez–Velez v. Simonet,* 919 F.2d 808, 810 (1st Cir.1990) (quoting *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); and citing 42 U.S.C. § 1983).

### (4) The First Amendment [3] Claims

■ "To recover on a first amendment claim under § 1983, a plaintiff must demonstrate that his conduct is deserving of first amendment protection and that the defendants' conduct of harassment was motivated by or substantially caused by his exercise of free speech." *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir.1987) (citing *Mount Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).

■ To determine whether a public employee's expression is protected by the First Amendment, the court must " 'seek a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Connick v. Myers,* 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983) (quoting *Pick-*

*ering v. Board of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968)).[4] Therefore, under *Connick,* the court must determine whether (1) plaintiff's expression constituted expression on a matter of public concern and (2) plaintiff's interest in such expression was outweighed by any interest the state may have had in discouraging such expression. *See id.*

#### (i) Matters of Public Concern

■ A public employee's expression on matters involving "actual or potential wrongdoing or breach of public trust" by government officials constitutes expression on matters of public concern. *See Connick, supra,* 461 U.S. at 147–48, 103 S.Ct. at 1690 (quoted *infra*).

■ In filing the PAB appeal, in presenting her grievance to defendants Smith and Thomas and the Director of Personnel, and in filing the instant action, plaintiff raised the issue of whether officials of the Treasury Department had violated New Hampshire law by reclassifying the position. The court finds, based on the evidence before it, that this issue involved a matter of "actual or potential wrongdoing or breach of public trust." *See, e.g.,* Plaintiff's Affidavit at ¶ 17. ("[Defendant Smith] stated that he and Defendant Thomas rushed to post the ... position in order to keep Diane Townsend, a relative of Defendant Thomas, employed. He continued on to state that at that point they were 'outside the rules' and did not follow them after that."). Therefore, the court finds that plaintiff's filing of the PAB appeal, her correspondence

---

**3.** The First Amendment applies to persons acting under color of state law through the Fourteenth Amendment. *See New York Times v. Sullivan,* 376 U.S. 254, 277, 84 S.Ct. 710, 724, 11 L.Ed.2d 686 (1964) (citing *Gitlow v. New York,* 268 U.S. 652, 666, 45 S.Ct. 625, 629, 69 L.Ed. 1138 (1925); *Schneider v. State,* 308 U.S. 147, 160, 60 S.Ct. 146, 150, 84 L.Ed. 155 (1939); *Bridges v. California,* 314 U.S. 252, 268, 62 S.Ct. 190, 196, 86 L.Ed. 192 (1941); *Edwards v. South Carolina,* 372 U.S. 229, 235, 83 S.Ct. 680, 683, 9 L.Ed.2d 697 (1963)); *see also id.* 376 U.S. at 265, 84 S.Ct. at 718 ("test", for state action under Fourteenth Amendment, "is not the form in which state power has been applied but, whatever the form, whether such power has in fact been exercised").

**4.** In *Connick,* the Court held that where an assistant district attorney who strongly opposed being transferred to prosecute cases in a different section of the criminal court distributed a questionnaire "concerning office transfer policy, office morale, the need for a grievance committee, the level of confidence in supervisors, and whether employees felt pressured to work in political campaigns" to the other assistant district attorneys in the office, *id.* 461 U.S. at 140–41, 155–56, 103 S.Ct. at 1686–87, 1694, the distribution of said questionnaire was not protected by the First Amendment, *id.* at 142–54, 103 S.Ct. at 1687–93.

with defendants Smith and Thomas and the Director of Personnel, and her filing of the instant action [5] constituted expression on matters of public concern. *See Connick, supra,* at 147–48, 103 S.Ct. at 1690.

### (ii) The Balancing Test

■ Applying the *Connick–Pickering* balancing test, the court must balance the plaintiff's interest "as a citizen", *Connick, supra,* at 142, 103 S.Ct. at 1687, in publicly or privately [6] expressing her allegations of wrongdoing or breach of trust by defendants Smith and Thomas against the interests of the State of New Hampshire in promoting efficiency at the Treasury Department by discouraging employees from filing grievances in response to the denial of promotions. The court finds that, as a matter of law, the State of New Hampshire has no legitimate interest in discouraging good-faith appeals to the PAB by permanent state employees. *See* New Hampshire Revised Statutes Annotated (RSA) 21–I:58 I (Supp.1991) [7] (right of appeal belongs to "any permanent employee who is affected by any application of the personnel rules," with the application of certain rules excepted. "In all cases, the personnel appeals board may ... make such ... order as it may deem just."). Therefore, given that plaintiff's expression in the form of filing the PAB appeal constituted expression on matters of public concern, if plaintiff filed the appeal in good faith, then, under *Connick,* said expression is protected by the First Amendment.

Bearing in mind that "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," *Anderson, supra,* 477 U.S. at 255, 106 S.Ct. at 2513, and, based on the evidence before it, the court finds that plaintiff has produced evidence sufficient for a reasonable jury to find that she filed the PAB appeal in good faith. Accordingly, the court finds that plaintiff's expression in the form of filing the PAB appeal is protected by the First Amendment.

The court finds, based on the evidence before it, that plaintiff has produced evidence sufficient for a reasonable jury to find that plaintiff's correspondence with defendants Smith and Thomas and the Director of Personnel occurred as part of the PAB appeals process. *See generally* N.H. Code of Administrative Rules Per [Personnel] 306.04.[8] Because the State of New Hampshire has no legitimate interest in discouraging good-faith employee participation in this process, the court finds that the State of New Hampshire has no legitimate interest in discouraging such correspondence. Accordingly, since plaintiff's expression in the form of her correspondence with defendants Smith and Thomas and the Director of Personnel constituted expression on matters of public concern, the court finds that, under *Connick,* said expression is protected by the First Amendment.[9] *See Connick, supra,* 461 U.S. at 142, 103 S.Ct. at 1687.

■ Again applying the *Connick–Pickering* balancing test, the court must balance the public interest in a public airing of plaintiff's allegation of wrongdoing or breach of trust by defendants Smith and Thomas, through her filing of the instant

---

5. Given this finding, the court does not address the question whether plaintiff's allegations in this action that defendants Smith and Thomas violated certain of her constitutional rights constituted expression on matters of public concern.

6. In *Connick* the United States Supreme Court reaffirmed its holding in *Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979), "that First Amendment protection applies when a public employee arranges to communicate privately with his employer rather than to express his views publicly." *Connick, supra,* 461 U.S. at 146, 103 S.Ct. at 1689.

7. Paragraph I was amended generally in 1988. The most recent amendment to paragraph I was effective June 18, 1990.

8. Effective April 15, 1983. Most recent amendment effective August 22, 1985.

9. Because the court finds this expression to be protected by the First Amendment as correspondence occurring as part of the PAB appeals process, the court does not reach the question whether this expression would be protected by the First Amendment even if it were unrelated to the PAB appeals process.

action, against the interests of the State of New Hampshire in promoting efficiency at the Treasury Department by discouraging employees from instituting such actions.

Under the Supremacy Clause of the United States Constitution,

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. art. VI, cl. 2. Given the Supremacy Clause, the court finds that, as a matter of law, the availability of federal causes of action under 42 U.S.C. §§ 1983 and 1985 supersedes any interest the State of New Hampshire may have in discouraging the filing of an action brought under those sections. Therefore, given that plaintiff's expression in the form of filing the instant action constituted expression on matters of public concern, the court finds that, under *Connick*, said expression is protected by the First Amendment.[10] *See Connick, supra,* at 142, 103 S.Ct. at 1687.

■ In light of the court's finding that plaintiff engaged in expression protected by the First Amendment, absent a finding of immunity, discussed *infra*, the court must deny defendants' motion for summary judgment to the extent that plaintiff has presented evidence sufficient for a reasonable jury to find (1) that a given defendant engaged in "conduct of harassment ... motivated by or substantially caused by plaintiff's exercise of free speech," *see Donahue v. Windsor Locks, supra,* 834 F.2d at 58; and (2) that such conduct " 'was committed by a person acting under color of state law,' " *Martinez–Velez, supra,* 919

F.2d at 810 (quoting *Parratt v. Taylor, supra,* 451 U.S. at 535, 101 S.Ct. at 1912). *See also* Rule 56(c), Fed.R.Civ.P.; *United States v. One Parcel of Real Property, supra,* 960 F.2d at 204.

Upon examination of the affidavits filed by plaintiff, the court determines that plaintiff has presented evidence sufficient to justify the required findings. For example, plaintiff's description of the meeting in which defendant Thomas allegedly "scolded [plaintiff] in a shouting voice and pounded her fist on her desk," Plaintiff's Affidavit at ¶ 16, and plaintiff's statement that on or about January 1991 defendant Thomas publicly humiliated plaintiff by "shouting at [her] to 'go ahead and hit me in the back', in the presence of other department employees," Plaintiff's Affidavit at ¶ 19, constitute evidence which a reasonable jury could construe as conduct designed to coerce plaintiff into dropping her appeal, *i.e.,* conduct of harassment motivated by or substantially caused by plaintiff's exercise of free speech. Similarly, plaintiff's affidavit contains evidence which a reasonable jury could construe as showing that on more than one occasion following the filing of the PAB appeal, defendant Smith required plaintiff to remain on the premises after working hours and thereafter subjected her to verbal abuse and intimidation in order to coerce her into dropping the appeal. In addition, based on the fact that plaintiff filed the instant action on March 16, and based on the evidence contained in the affidavits of plaintiff and Anthony D'Angelantonio regarding the warning issued by defendant Thomas on March 23, 1992, the court determines that a reasonable jury could find that defendant Thomas issued this warning for the purpose of retaliating against plaintiff for filing the instant action.[11]

---

**10.** Because the instant action includes federal claims, the court does not address the issue of whether plaintiff's expression in the form of filing her state law claims is, in and of itself, protected by the First Amendment.

**11.** However, since the only evidence presented by plaintiff on the issue of defendant Smith's conduct after the filing of the instant action are the statements by Mr. D'Angelantonio that "Defendants Thomas and Smith acknowledged that

no factual investigation was conducted prior to the issuance of the warning" and "Thomas and Smith acknowledged that no other employee was ever asked whether they had used the machine on the dates in question," D'Angelantonio Affidavit at ¶ 4, the court finds that plaintiff has failed to present evidence sufficient to enable a reasonable jury to find that defendant Smith engaged in any conduct of harassment motivat-

### (iii) State Action

The court further determines that in presenting evidence sufficient to support a finding that defendants Smith and Thomas engaged in conduct violative of plaintiff's First Amendment right to freedom of speech, plaintiff has also presented evidence sufficient to support a finding that defendants Smith and Thomas engaged in such conduct in the course of their employment with the Treasury Department, *i.e.*, under color of state law. *See West v. Atkins*, 487 U.S. 42, 49–50, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988) ("It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State.").

### (5) *The Fourteenth Amendment Claims*

#### (i) Deprivation of Property Claims

■■■■■■ "The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." *Board of Regents v. Roth*, 408 U.S. 564, 576, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548 (1972). Therefore, plaintiff's section 1983 claims alleging that defendants deprived her of property without due process of law in violation of the Fourteenth Amendment must fail if plaintiff cannot demonstrate that she retains a property interest in her employment with the Treasury Department, either at the level of Accounting Clerk III or at the level of the position at issue here. *Id.* at 576–78, 92 S.Ct. at 2708–09.

The question whether a public employee retains a property interest in state employment "must be decided by reference to state law." *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *see also Roth, supra*, 408 U.S. at 577, 92 S.Ct. at 2709 ("Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law...."). In New Hampshire, "public employment is not a constitutionally protected property right of the employee." *Appeal of Parker*, 121 N.H. 986, 988, 437 A.2d 283, 284 (1981). Therefore, plaintiff's Fourteenth Amendment deprivation of property claim fails as a matter of law.

#### (ii) Deprivation of Liberty Claims

Plaintiff contends that she "has a liberty interest in pursuing her chosen vocation for which she was qualified," Plaintiff's Objection Memorandum at 12 (citing *Richardson v. Chevrefils*, 131 N.H. 227, 552 A.2d 89 (1988)), and further contends that defendants deprived her of such interest without due process of law in violation of the Fourteenth Amendment by "creating an environment in which she could no longer maintain her employment," *id.*

■■■■■■ In *Richardson v. Chevrefils, supra*, the New Hampshire Supreme Court held that

> an individual ha[s] a liberty interest cognizable under the fourteenth amendment, and § 1983, in continuing to pursue an occupational calling that he has [heretofore] exercised, which interest the government and its agents might not extinguish by the imposition of a stigma or disqualification in the absence of notice and hearing prior to the government's action.

*Id.*, 131 N.H. at 235, 552 A.2d at 94; *see also id.* 131 N.H. at 235–37, 552 A.2d at 94–96 (citing *Cafeteria Workers v. McElroy*, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961); *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *cf. Medina v. Rudman*, 545 F.2d 244 (1st Cir.1976), *cert. denied*, 434 U.S. 891, 98 S.Ct. 266, 54 L.Ed.2d 177 (1977); *see Roth, supra*, 408 U.S. at 574, 92 S.Ct. at 2707).[12] Specifical-

---

ed by or substantially caused by plaintiff's filing of the instant action.

**12.** In essence, the *Richardson* court based this holding on the United States Supreme Court's decision in *Paul v. Davis, supra*, 424 U.S. 693, 96 S.Ct. 1155, in which the Court implied that Fourteenth Amendment procedural due process protections apply wherever "as a result of state action, a right or status previously recognized by state law [is] distinctly altered or extin-

ly, in *Richardson, supra,* the supreme court recognized a liberty interest in the plaintiff's "status as a person qualified by education and experience to practice social work on the staff of institutions for the care of children." *Richardson, supra,* 131 N.H. at 237, 552 A.2d at 95. The supreme court determined that such status was extinguished when the plaintiff's name was listed in a state registry [13] "as ... a perpetrator of sexual abuse, *thereby rendering him unemployable in any such institution in New Hampshire." Id.* at 237, 552 A.2d at 95–96 (emphasis added).

Based on (1) defendants' admission "that the Plaintiff took the Accounting Technician exam offered by the N.H. Division of Personnel and that the Plaintiff became certified for that position," Defendants' Answer to Amended and Supplemented Complaint at ¶ 11; and (2) the Treasury Department's definition of such position,[14] the court finds that under *Richardson,* plaintiff has a liberty interest in her status as a person qualified by education and experience to perform accounting duties at a paraprofessional level. However, since plaintiff has failed to produce any evidence showing that, with respect to said status, she is "unemployable", *Richardson, supra,* 131 N.H. at 237, 552 A.2d at 95–96, or that her *status* as such has been otherwise "distinctly altered or extinguished," *Paul v. Davis, supra,* 424 U.S. at 711, 96 S.Ct. at 1165, the court finds, based on the evidence before it, that plaintiff has failed to present evidence sufficient for a reasonable jury to find that she has been deprived of liberty without due process of law in violation of the Fourteenth Amendment.

**c. Count II: Civil Rights Claims Under 42 U.S.C. § 1985(2)**

Plaintiff designates Count II as a "Civil Rights Claim Under 42 U.S.C. § 1985(2) And The First, Fourth, Fifth, Ninth, Thirteenth And Fourteenth Amedments [sic] To The United States Constitution." Complaint at 8. Notwithstanding this designation, the essence of Count II is contained in the Complaint at ¶¶ 27–28, and 30, in which plaintiff alleges that,

27— The defendants ... conspired, contrived, connived, agreed, planned and intended to harass and cause economic and psychological injury to plaintiff and other whistleblowers and employees of Treasury who dare vigorously assert their rights under the law.

28— *The defendants' purpose in so* acting was to obstruct the due course of justice; to effectuate their purpose of locking the Treasury Department employees out of other Personnel Appeals Board or any other administrative or enforcement authority charged under law to hear and remedy violations of the law by the Treasurer and her deputies.

⋅ ⋅ ⋅ ⋅ ⋅

. . . .

30— Pursuant to their conspiracy, the defendants acted to deprive Plaintiff and other whistleblowers and employees who vigorously assert their rights of their civil rights by repeated and insidious acts of discrimination, harassment, retaliation, intimidation and bad faith all in violation of 42 USC 1985(2).

Title 42 U.S.C. § 1985(2), (3) provides:

If two or more persons in any State or Territory conspire to deter, by force, in-

---

guished", *see id.* at 710–12, 96 S.Ct. at 1164–65. *See generally Richardson, supra,* 131 N.H. at 235–37, 552 A.2d at 94–96. Given the manner in which the court resolves this issue, *see infra,* it declines to address the question whether the above-quoted holding of *Richardson* is constitutionally valid.

13. Plaintiff's name was listed "in the State's central registry of perpetrators of child abuse, neglect and exploitation with a reference to [an] ... incident as 'sexual abuse,' " *Id.* 131 N.H. at 230, 552 A.2d at 91.

14. The Treasury Department defines the position of Accounting Technician as follows:

ACCOUNTING TECHNICIAN
*DEFINITION:* Performs accounting duties at a para-professional level, involving the application of basic techniques of accounting relative to a variety of functions such as payrolls, control of departmental expenditures, or maintenance of accounting records on other specified programs as outlined by a supervisor; does related work as required.
Plaintiff's Objection Memorandum, Attachment 1, at 3.

timidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

. . . .

(3) . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

■ The first portion of section 1985(2) proscribes conspiracies that interfere with "federal judicial proceedings," *Kush v. Rutledge*, 460 U.S. 719, 724, 103 S.Ct. 1483, 1487, 75 L.Ed.2d 413 (1983), and the second portion "applies to conspiracies to obstruct the course of justice in state courts." *Id.* at 725, 103 S.Ct. at 1487. Therefore, the court agrees with the Fifth Circuit's holding in *Deubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754, 758 (5th Cir.1987), that "interference or obstruction of administrative proceedings is not redressable under section 1985(2)."

The PAB is an administrative body. *See, e.g.,* RSA 21–I:45, 21–I:46. Accordingly, under *Deubert* and *Kush*, insofar as plaintiff's section 1985(2) claims are based on

allegations that defendants Smith and Thomas conspired to deter plaintiff's participation in the PAB appeals process, such claims fail as a matter of law. *Deubert, supra,* at 758; *see also Kush, supra,* 460 U.S. at 724–25, 103 S.Ct. at 1486–87.

Consistent with the court's finding that plaintiff has failed to meet her burden of production with respect to her allegations that defendant Smith engaged in conduct of harassment in response to plaintiff's filing of the instant action, *see supra* note 11, the court finds, based on the evidence before it, that plaintiff has failed to present evidence sufficient for a reasonable jury to find that defendant Smith conspired to deter plaintiff from attending court or testifying freely in connection with the instant action.

■ Further, the court finds, based on the evidence before it, that plaintiff has failed to present evidence sufficient for a reasonable jury to find that defendant Thomas, independent of defendant Smith, *conspired* to deter plaintiff from attending court or testifying freely in connection with the instant action. For example, plaintiff has presented no evidence of a conspiracy between defendant Thomas and plaintiff's supervisor. Therefore, plaintiff's section 1985(2) claim against defendant Thomas for conduct in response to plaintiff's filing of the instant action fails to withstand summary judgment.

Since all of plaintiff's section 1985(2) claims against defendants Smith and Thomas fail to withstand the instant motion, and since plaintiff has failed to present any evidence of conduct by the Treasury Department itself independent of the conduct of defendants Smith and Thomas, the court finds that any section 1985(2) claims plaintiffs may have against the Treasury Department must also fail.[15]

In light of the foregoing, the court grants defendants' motion for summary judgment as to Count II.

---

**15.** Because plaintiff's section 1985(2) claim against the Treasury Department fails to withstand summary judgment, the court does not address the question whether such claims would be barred by the Eleventh Amendment.

d. Count III: Civil Rights Claims under 42 U.S.C. § 1985(3)

In the complaint at ¶ 33, plaintiff alleges that

The defendants State Treasurer, Georgie Thomas and Chief Deputy Treasurer, Douglas A. Smith, by the aforesaid acts, individually and in their respective official capacities, conspired, agreed, contrived, planned and intended to harass intimidate and cause economic and psychological injury to the plaintiff and other whistleblowers or employees who dare to assert their rights as employees.

In the complaint at ¶ 35, plaintiff further alleges that

Pursuant to their conspiracy, the defendants, acted to deprive Plaintiff and other whistleblowers or employees who dare to assert their rights, of their civil rights by repeated and insidious acts of harassment, retaliation, intimidation, bad faith and threat, all in violation of 42 USC S. 1985(3).

 In *United Bhd. of Carpenters v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983), a majority of the United States Supreme Court held that "it is a close question whether § 1985(3) was intended to reach any class-based animus other than animus against Negroes and those who championed their cause...." *Id.* at 836, 103 S.Ct. at 3360. Writing for the dissent in *Scott, supra,* Justice Blackmun stated that, in his view, Congress intended section 1985(3) to provide a federal remedy for those classes of individuals "in unprotected circumstances similar to those of the victims of Klan violence." *Id.* at 851, 103 S.Ct. at 3368 (Blackmun, J., dissenting).

Given Justice Blackmun's dissenting view in *Scott,* it is clear that the protections of section 1985(3) "can extend no further than to those classes of persons who are, so far as the enforcement of their rights is concerned, 'in unprotected circumstances similar to those of the victims of Klan violence.'" *Buschi v. Kirven,* 775 F.2d 1240, 1258 (4th Cir.1985) (quoting *Scott,* 463 U.S. at 851, 103 S.Ct. at 3368). "'Whistleblowers'[16] do not meet the test of possessing 'characteristics comparable to those characterizing classes such as race, national origin, and sex.' Nor can they be said to be in 'unprotected circumstances.'" *Id.* Therefore, the court finds that whistleblowers do not qualify as a class entitled to benefits under section 1985(3), *id.,* and plaintiff's section 1985(3) claims fail as a matter of law.

e. State law claims

Plaintiff designates Count IV as stating claims under New Hampshire law for intentional infliction of emotional distress and intentional interference with employment contract (hereinafter "intentional interference with contractual relations", the New Hampshire common law designation of this tort). Complaint at 12. Plaintiff alleges that defendants Smith and Thomas[17]

intentionally inflicted the aforesaid acts of harassment, intimidation and retaliation on the Plaintiff with malice and without any ... justification or excuse and did so for the sole purpose of causing emotional distress and anguish and undue loss of enhanced income through her employment at the Treasury Department.

*Id.* at ¶ 40. Plaintiff alleges that as a result of "the aforesaid acts", *id.,* she suffered "loss of potential income", *id.* at ¶ 41, "loss of enhanced income through denial of her promotion and psychiatric counselling and care", *id.* at ¶ 42, "great anguish and emotional harm", *id.,* and "emotional pain", *id.* at 41.

In Count V, plaintiff alleges that the conduct of defendants Smith and Thomas in response to plaintiff's filing of the PAB

---

**16.** A "whistleblower" is an employee who publicly exposes wrongdoing by superiors. *See Buschi v. Kirven, supra,* 775 F.2d at 1243.

**17.** The court notes that Count IV contains no allegations concerning defendant Treasury Department. Complaint at 12, ¶¶ 39–43. Consis-

tent with the court's observation, plaintiff concedes that "[n]o claim of respondeat superior is made under the state law against any Defendant." Plaintiff's Objection Memorandum at 27. *See also supra* note 1.

appeal violated New Hampshire's Whistleblower Protection Act, RSA 275–E (Supp. 1991).

### (1) Intentional Infliction of Emotional Distress

■ New Hampshire recognizes the tort of intentional infliction of emotional distress. *Morancy v. Morancy*, 134 N.H. 493, 495, 593 A.2d 1158, 1159 (1991). In *Morancy*, the Supreme Court of New Hampshire defined this tort in the following manner:

'One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm results, for such bodily harm.'

*Id.* at 495–96, 593 A.2d at 1159 (quoting Restatement (Second) of Torts § 46 (1965)). The supreme court further cited the Restatement of Torts for clarification of the term "severe emotional distress":

'Emotional distress passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like. It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is extreme that the liability arises. Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity.'

*Id.* at 496, 593 A.2d at 1159 (quoting Restatement (Second) of Torts, *supra*, § 46 cmt. j).

This court has previously found that in an employment situation, a plaintiff's allegations to the effect that she was "constructively terminated through a pattern of deliberate harassment" by a superior were sufficient to state a claim for intentional

infliction of emotional distress under New Hampshire law. *See Brown v. Town of Allenstown*, 648 F.Supp. 831, 834, 839–40 (D.N.H.1986). Therefore, based on plaintiff's evidence showing that defendants Smith and Thomas, plaintiff's superiors at the Treasury Department, constructively terminated plaintiff, *see, e.g.*, Plaintiff's Affidavit at ¶ 66 *and Calhoun v. Acme Cleveland Corp.*, 798 F.2d 559, 561 (1st Cir.1986) (constructive discharge occurs where " 'the new working conditions [are] so difficult or unpleasant that a reasonable person in employee's shoes would feel compelled to resign' ") (quoting *Alicea Rosado v. Garcia Santiago*, 562 F.2d 114, 119 (1st Cir.1977))), through a pattern of deliberate harassment, *see, e.g.*, Plaintiff's Affidavit at ¶¶ 16, 18, 19, 22, 35; D'Angelantonio Affidavit at ¶ 4, the court finds that plaintiff has presented evidence sufficient for a reasonable jury to find that defendants Smith and Thomas intentionally inflicted severe emotional distress upon plaintiff.

### (2) Intentional Interference with Contractual Relations

■ New Hampshire recognizes the tort of intentional interference with contractual relations. *Emery v. Merrimack Valley Wood Products*, 701 F.2d 985, 988 (1st Cir.1983) (citing *Montrone v. Maxfield*, 122 N.H. 724, 449 A.2d 1216 (1982); *Baker v. Dennis Brown Realty*, 121 N.H. 640, 433 A.2d 1271 (1981); *Hangar One v. Davis Assoc.*, 121 N.H. 586, 431 A.2d 792 (1981); *Bricker v. Crane*, 118 N.H. 249, 387 A.2d 321 (1978); *Griswold v. Heat*, 108 N.H. 119, 229 A.2d 183 (1967); *Russell v. Croteau*, 98 N.H. 68, 94 A.2d 376 (1953)). Under New Hampshire law,

[t]he elements necessary successfully to plead a cause of action for tortious interference with contractual relations are 'that (1) the plaintiff had an economic relationship with a third party; (2) the defendant knew of this relationship; (3) the defendant *intentionally* and *improperly* interfered with this relationship; and (4) the plaintiff was damaged by such interference.'

*Jay Edwards, Inc. v. Baker,* 130 N.H. 41, 46, 534 A.2d 706, 709 (1987) (quoting *Emery, supra,* 701 F.2d at 988) (emphasis in original).

■ In her affidavit, as discussed *supra,* plaintiff has presented evidence sufficient for a reasonable jury to find (1) that plaintiff had an economic relationship, *i.e.,* an employment contract, with the State of New Hampshire; (2) that defendants Smith and Thomas, as plaintiff's superiors at the Treasury Department, knew of this relationship; (3) that defendants Smith and Thomas intentionally and improperly interfered with this relationship by improperly reclassifying the position in order to benefit Diane Townsend at plaintiff's expense; [18] and (4) that plaintiff was damaged by this interference by being denied a promotion.

■ Defendants contend that plaintiff has failed to state a claim for intentional interference with contractual relations because, although plaintiff had an economic relationship with the state, the state was not a third party with respect to the relationships between plaintiff and either defendant Smith or defendant Thomas. Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Defendants' Memo") at 16–17. Defendants argue the following:

> The Defendants were acting within the scope of their official authority when they denied the Plaintiff's promotion. Thus, they were acting as the state itself. Since the Plaintiff is employed by the state, there is no interference with an employment contract between the Plaintiff and a *third* party.

*Id.* at 16 (emphasis in original). In support of this argument, defendants cite *Piekarski v. Home Owners Sav. Bank,* 956 F.2d 1484, 1495 (8th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 206, 121 L.Ed.2d 147 (1992), which they characterize as standing for the proposition that

> [a] bank president acting within the scope of his employment in firing an employee was acting for the bank and

therefore cannot be held liable for tortious interference with employment because a party cannot interfere with its own contract.

Defendants' Memo at 16. However, contrary to the impression left by defendants' characterization, in *Piekarski, supra,* the Eighth Circuit held that an individual was not acting within the scope of his employment if his decision "was motivated by actual malice", where "actual malice" is defined as "bad faith, personal ill-will, spite, hostility, *or a deliberate intent to harm the plaintiff.*" *Piekarski, supra,* 956 F.2d at 1495 (citing *Nordling v. Northern States Power Co.,* 478 N.W.2d 498, 504–05 (Minn.1991)) (emphasis added).

The court finds the approach dictated by its more complete reading of *Piekarski* to be consistent with New Hampshire common law regarding agency. *See Daigle v. City of Portsmouth,* 129 N.H. 561, 580, 534 A.2d 689, 699 (1987) (an act is not within the scope of employment unless it was "performed in 'furtherance' of the employer's business") (quoting *Richard v. Amoskeag Mfg. Company,* 79 N.H. 380, 383, 109 A. 88, 91 (1920)). In this regard, the court finds, based on the evidence before it, that plaintiff has presented evidence sufficient for a reasonable jury to find that when defendants Smith and Thomas allegedly interfered with plaintiff's contractual relations, they were motivated by a deliberate intention to harm plaintiff; i.e., by actual malice, as defined in *Piekarski.* Therefore, for the purposes of summary judgment, the court finds that, under *Piekarski,* the State of New Hampshire was a third party with respect to the relationships between plaintiff and either defendant Smith or defendant Thomas, and plaintiff's claims of intentional interference with contractual relations against defendants Smith and Thomas withstand the instant motion.

*(3) The New Hampshire Whistleblowers' Protection Act* [19]

■ Under New Hampshire law, "[a] party is not required to exhaust administra-

---

**18.** *See, e.g.,* Plaintiff's Affidavit at ¶ 17 (quoted *supra* ).

**19.** RSA 275–E (Supp.1991) ("Act").

tive remedies where the issue *on appeal* is *a question of law* rather than a question of the exercise of administrative discretion." *Bedford Residents Group v. Town of Bedford,* 130 N.H. 632, 639, 547 A.2d 225, 230 (1988) (citing *Bourgeois v. Town of Bedford,* 120 N.H. 145, 149, 412 A.2d 1021, 1024 (1980) (citing *Tremblay v. Town of Hudson,* 116 N.H. 178, 179, 355 A.2d 431, 432 (1976); *Metzger v. Brentwood,* 115 N.H. 287, 290-91, 343 A.2d 24, 26-27 (1975))) (emphasis added). Further, New Hampshire "[has] not always required a party to exhaust administrative remedies *where the constitutionality of an ordinance is in question or where the agency lacks authority to act." Metzger v. Brentwood, supra,* 115 N.H. at 290, 343 A.2d at 26 (emphasis added). However, it is also true that under New Hampshire law, "administrative remedies *must* be exhausted when the proper exercise of administrative discretion is involved." *Tremblay v. Town of Hudson, supra,* 116 N.H. at 179-180, 355 A.2d at 432 (1976) (citing 2 Am.Jur.2d *Administrative Law* § 595 (1962)) (emphasis added).

■■■ The court looks to the statutory framework of the Act to determine the present posture of any claim plaintiff may have under the Act. Section 275–E:4 of the Act sets forth the rights and remedies available to an employee who is a victim of retaliatory conduct in response to such employee's report of a violation of any state or federal law or rule. RSA 275–E:4 (Supp. 1991); *see also* 275–E:2 (Supp.1991). Under section 275–E:4:

I. Any employee who alleges a violation of rights under RSA 275–E:2 or 3, and who has first made a reasonable effort to maintain or restore such employee's rights through any grievance procedure or similar process available at such employee's place of employment, may obtain a hearing with the commissioner of labor or a designee appointed by the commissioner. Following such hearing, the labor commissioner or the designee appointed by such commissioner shall render a judgment on such matter, and shall order, as the commissioner or his designee considers appropriate, reinstatement of the employee, the payment of fringe benefits and seniority rights, any appropriate injunctive relief, or any combination of these remedies.

II. Decisions rendered by the commissioner of labor under paragraph I may be appealed pursuant to RSA 541.

RSA 275–E:4 I and II (Supp.1991). Section 541:3 provides that

[w]ithin twenty days after any order or decision has been made by the commission,[20] any party to the action or proceeding before the commission or any person directly affected thereby, may apply for a rehearing in respect to any matter determined in the action or proceeding, or covered or included in the order....

RSA 541:3. Section 541:6 further provides that

[w]ithin thirty days after the application for a rehearing is denied, or, if the application is granted, then within thirty days after the decision on such rehearing, the applicant may appeal by petition to the [New Hampshire] supreme court.

RSA 541:6.

Assuming *arguendo* (1) that plaintiff has alleged facts sufficient to entitle her to the rights and remedies available under the Act, and (2) that plaintiff has "made a reasonable effort to maintain or restore [her] rights", RSA 275–E:4 I, the court determines that plaintiff's "claims" under the Act are at a stage where she must "obtain a hearing with the commissioner of labor or a designee appointed by the commissioner," *id.,* before she is entitled to either administrative or judicial review of her "case". *See id. and* RSA 275–E:4 II, 541:3, 541:6. In other words, plaintiff's "claims" under the Act are at a stage where the proper exercise of the administrative discretion of "the labor commissioner or a designee appointed by such commis-

**20.** Under RSA 541:1, "[t]he word 'commission' as here used means ... any state department or official concerning whose decision a rehearing or appeal is sought in accordance with the provisions of this chapter."

sioner," RSA 275–E:4 I, is involved.[21] Therefore, the court finds that under the previously stated rule in *Tremblay v. Town of Hudson, supra,* plaintiff is currently barred from seeking judicial review of any claims she may have under the Act.[22]

**f. Official Immunity**

■■■ Defendants contend that under RSA 541–B:19 I(d) (Supp.1991), defendants Smith and Thomas are immune from liability for the intentional torts constituting plaintiff's state law claims. Defendants' Memo at 24. Chapter 541–B sets forth procedures and guidelines for bringing claims against the state. *See generally* RSA 541–B:1, *et seq.* (Supp.1991). Section 541–B:19 I(d) provides in pertinent part:

I. Without otherwise limiting or defining the sovereign immunity of the state and its agencies, the provisions of this chapter shall not apply to:

. . . .

(d) Any claim arising out of an intentional tort, including assault, battery, false imprisonment, false arrest, *intentional mental distress,* malicious prosecution, malicious abuse of process, libel, slander, misrepresentation, deceit, invasion of privacy, interference with advantageous relations, or *interference with contractual relations, provided that the employee whose conduct gives rise to the claim reasonably believes, at the time of the acts or omissions complained of, that his conduct was lawful,* and provided further that the acts complained of were within the scope of official duties of the employee for the state.

(Emphasis added.)

The court finds, based on the evidence before it, that plaintiff has presented evidence sufficient for a reasonable jury to find that neither defendant Smith nor defendant Thomas reasonably believed their conduct was lawful at the time of the acts or omissions giving rise to plaintiff's claims of (1) intentional infliction of emotional distress [23] and (2) intentional interference with contractual relations.[24] Accordingly, for the purposes of summary judgment, neither defendant Smith nor defendant Thomas satisfies the reasonable belief requirement of section 541–B:19 I(d), and neither defendant Smith nor Defendant Thomas is entitled to official immunity under section 541–B:19 I(d).[25]

■■■ Defendants further contend that plaintiff's state law claims against defen-

21. Further, the court notes that this is not a situation "where the issue on appeal is a question of law," *Bedford Residents Group, supra,* 130 N.H. at 639, 547 A.2d at 230, "where the constitutionality of an ordinance is in question", *Metzger, supra,* 115 N.H. at 290, 343 A.2d at 26, "or where the agency lacks authority to act," *id.*

22. The court notes that in Plaintiff's Objection Memorandum at 30, plaintiff concedes that "[a] summary judgment may be granted on Count V of the Plaintiff's original complaint."

23. *See, e.g.,* Plaintiff's Affidavit at ¶¶ 16 ("After Defendant Thomas received notice of my appeal to the Personnel Appeals Board, I was called into her office, to be privately questioned by her and Defendant Smith. Defendant Thomas scolded me in a shouting voice and pounded her fist on her desk. I was visibly shaking and crying and was told to leave Defendant Thomas' office."), 18 ("On or around January, 1991, Defendant Smith again told me to remain on the premises after working hours. He kept me over one hour, questioning me about my appeal and pressuring me to drop the appeal. He stated that if I pursued the appeal that things would not be nice and that Defendant Thomas was of

the opinion that I had 'stabbed her in the back'; he also stated that I didn't stand a 'chance in hell of winning' and that I should drop it now. He also warned me Thomas would hold a grudge. Finally I was allowed to leave, again visibly upset and shaken."), and 19 ("On or about January, 1991 while in the performance of my duties in a work area of the office, Defendant Thomas shouted at me to 'go ahead and hit me in the back', in the presence of other department employees. I was embarrassed and humiliated.").

24. *See, e.g., id.* at ¶ 17 ("[Defendant Smith] stated that he and Defendant Thomas rushed to post the ... position in order to keep Diane Townsend, a relative of Defendant Thomas, employed. *He continued on to state that at that point they were 'outside the rules' and did not follow them after that.*" Emphasis added).

25. Since neither of these defendants satisfies the reasonable belief requirement of section 541–B:19 I(d), the court does not address the question whether "the acts complained of were within the scope of [their] official duties," RSA 541–B:19 I(d) (Supp.1991).

dants Smith and Thomas are barred under the doctrine of official immunity as contained in RSA 99–D. Defendants' Memo at 23–25. The immunity provided by section 99–D:1 is

> applicable to all claims and civil actions, which claims or actions arise against such officers, trustees, officials, and employees in their personal capacity or official capacity, or both such capacities, from acts or omissions within the scope of their official duty while in the course of their employment for the state and not in a wanton or reckless manner.

RSA 99–D:1.

Defendants' contention is refuted by the New Hampshire Supreme Court's ruling in *Opinion of the Justices*, 126 N.H. 554, 493 A.2d 1182 (1985) (advisory opinion addressing the validity of proposed sovereign immunity legislation RSA 541–B:19 I), that, under the New Hampshire Constitution, the state may not immunize itself or its officers from liability for intentional torts "if the employee did not reasonably believe in the lawfulness of his conduct." *Id.*, 126 N.H. at 564, 493 A.2d at 1189; *see also id.* at 559–62, 493 A.2d at 1186–88 (discussing the significance of "the constitutional principle 'that all citizens have a right to the redress of their actional injuries' and the policy that a person or entity that 'unreasonably interferes with the interests of another should be liable for the resulting injury.' *Gould v. Concord Hosp.*, 126 N.H. 405, 409, 493 A.2d 1193, 1196 (1985); N.H. CONST. pt. 1, art. 14."). According-

ly, section 99–D:1 must be read as conditioning official immunity for intentional torts upon the employee's reasonable belief in the lawfulness of his conduct. *See Opinion of the Justices, supra*, 126 N.H. at 564, 493 A.2d at 1189. Therefore, since neither defendant Smith nor defendant Thomas satisfies the reasonable belief requirement of section 541–B:19 I(d), neither defendant is entitled to official immunity under section 99–D:1.[26]

### f. Qualified Immunity

Defendants contend that defendants Smith and Thomas in their personal capacities are entitled to qualified immunity under *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Defendants' Memo at 19–22.[27] In *Harlow*, the United States Supreme Court held that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738.

> On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred.... If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct.

---

**26.** Since neither of these defendants satisfies the implicit reasonable belief requirement of section 99–D:1, the court does not address the questions (1) whether the alleged acts or omissions occurred "within the scope of their official duty," RSA 99–D:1; or (2) whether the alleged acts or omissions occurred "in a wanton or reckless manner," *id.*

**27.** The doctrine of qualified immunity does not provide an affirmative defense against claims based solely upon state law. *See Richardson v. Chevrefils, supra*, 131 N.H. at 232, 552 A.2d at 92.

> The doctrine is understood to provide an affirmative defense that may be pleaded in either of the following types of actions brought to redress violations of interests protected under the National Constitution: (1) a constitu-

tional tort action against a defendant alleged to have acted under color of federal law, of a sort recognized in the theory of *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 [91 S.Ct. 1999, 29 L.Ed.2d 619] (1971); see *Harlow v. Fitzgerald*, 457 U.S. 800 [102 S.Ct. 2727, 73 L.Ed.2d 396] (1982); or (2) a statutory action against a defendant said to have acted under color of State law to violate a plaintiff's right, privilege, or immunity secured by the National Constitution and laws, which may be maintained under § 1983, *see Davis v. Scherer*, 468 U.S. 183, 190 [104 S.Ct. 3012, 3017, 82 L.Ed.2d 139] (1984); *Harlow v. Fitzgerald, supra.*

*Id.* Therefore, the court finds that defendants Smith and Thomas are not entitled to qualified immunity with respect to plaintiff's surviving state law claims.

*Harlow v. Fitzgerald, supra,* 457 U.S. at 818–19, 102 S.Ct. at 2738 (footnote omitted).

Plaintiff's surviving First Amendment claims are based on alleged conduct by defendants Smith and Thomas following plaintiff's December 19, 1990, filing of the PAB appeal, and alleged conduct by defendant Thomas following plaintiff's March 16, 1992, filing of the instant action. Therefore, under *Harlow v. Fitzgerald, supra,* if the law governing plaintiff's First Amendment claims was clearly established prior to December 19, 1990, then neither defendant Smith nor defendant Thomas is entitled to qualified immunity. *Id.* In determining whether such law was clearly established, the court is mindful that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

In support of its finding that plaintiff has presented evidence sufficient for a reasonable jury to find that defendants Smith and Thomas violated plaintiff's First Amendment right to freedom of speech, the court relies upon the following authority, all of which was effective as of December 19, 1990: *Connick v. Myers, supra,* 461 U.S. 138, 103 S.Ct. 1684 (decided April 20, 1983); *Donahue v. Windsor Locks Bd. of Fire Comm'rs, supra,* 834 F.2d 54 (decided November 25, 1987); RSA § 21–I:58 (Supp. 1991) (amended generally in 1988, most recent amendment effective June 18, 1990); N.H.Code of Administrative Rules Per 306.04 (effective April 15, 1983, most recent amendment effective August 22, 1985); U.S. Const. art. VI, cl. 2 (the Supremacy Clause).

In *Connick v. Myers, supra,* the United States Supreme Court recognized that "[f]or at least 15 years, it has been settled that a State cannot condition public employment on a basis that infringes the employ-

ee's constitutionally protected interest in freedom of expression." *Connick v. Myers, supra,* 461 U.S. at 142, 103 S.Ct. at 1687. The Court viewed the *Connick–Pickering* balancing test as embodying this longstanding rule. *See id.*

In *Donahue, supra,* 834 F.2d 54, the Second Circuit reversed an order of summary judgment against the plaintiff, a fire fighter, based on evidence indicating genuine issues of material fact as to whether the defendants, the plaintiff's superiors, had engaged in conduct of harassment in retaliation for the plaintiff's public criticism of firehouse practices. *Id.* The Second Circuit observed that such conduct "can lead, at least, to an inference of a legally-cognizable 'chilling effect' upon [the plaintiff]'s exercise of free speech." *Id.* at 59 (quoting *Yoggerst v. Stewart,* 623 F.2d 35, 39 (7th Cir.1980)). Further, the Second Circuit noted that "the defendants' actions may be construed as 'warnings' to [the plaintiff] that he would be discharged or 'constructively discharged' through harassment if he persisted in this conduct." *Id.*

Based on the existence of the Second Circuit's opinion in *Donahue,* the court finds that a reasonably competent public official in either of the positions held by defendants Smith and Thomas would have understood that the First Amendment protection of public employee expression recognized by the United States Supreme Court in *Connick v. Myers, supra,* not only protects public employees who engage in protected First Amendment expression from being discharged for such expression, but also protects such employees from being subjected to conduct of harassment in retaliation for such expression.[28]

Restating the *Connick–Pickering* balancing test: To determine whether a public employee's expression is protected by the First Amendment, the court must " 'seek a balance between the interests of the [employee], as a citizen, in commenting upon

---

**28.** The court notes that even in the absence of *Donahue,* a reasonable public official in either of the positions held by defendants Smith and Thomas would understand that the First Amendment protections recognized in *Connick*

also provide protection against a superior's conduct of harassment, since such conduct is likely to constitute a constructive discharge of the employee. *See, e.g., Calhoun, supra,* 798 F.2d at 561.

matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Connick v. Myers, supra,* 461 U.S. at 142, 103 S.Ct. at 1687.

The *Connick–Pickering* balancing test assumes that the public employee expression at issue is expression on "matters of public concern." *Connick v. Myers, supra,* 461 U.S. at 142, 103 S.Ct. at 1687. Therefore, in resolving the question whether defendants Smith and Thomas are entitled to qualified immunity, the court must determine whether a reasonably competent public official in either of the positions held by defendants Smith and Thomas would have understood that plaintiff's expression in the form of filing the PAB appeal and the instant action constituted expression on matters of public concern.

In *Connick v. Myers, supra,* the Court clearly implied that a public employee's expression on matters involving "actual or potential wrongdoing or breach of trust" by government officials constitutes expression on matters of public concern:

> Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record. In this case, with but one exception, the questions posed by Myers to her co-workers do not fall under the rubric of matters of 'public concern.' We view the questions pertaining to the confidence and trust that Myers' co-workers possess in various supervisors, the level of office morale, and the need for a grievance committee as mere extensions of Myers' dispute over her transfer to another section of the criminal court. Unlike the dissent, we do not believe these questions are of public import in evaluating the performance of the District Attorney as an elected official. Myers did not seek to inform the public that the District Attorney's office was not discharging its governmental respon-

sibilities in the investigation and prosecution of criminal cases. *Nor did Myers seek to bring to light actual or potential wrongdoing or breach of trust on the part of Connick and others.* Indeed, the questionnaire, if released to the public, would convey no information at all other than the fact that a single employee is upset with the status quo.

*Id.,* 461 U.S. at 147–48, 103 S.Ct. at 1690–91 (emphasis added). In view of this language and the court's determination that the information expressed through the filing of the PAB appeal and the instant action brought to light matters involving "actual or potential wrongdoing or breach of trust" by government officials, the court finds that it would have been clear to a reasonably competent public official in either of the positions held by defendants Smith and Thomas that such expression constituted expression on matters of public concern.

The *Connick–Pickering* balancing test limits a public employee's First Amendment right to freedom of speech to the extent that such speech interferes with "the government's interest in the effective and efficient fulfillment of its responsibilities to the public." *Connick, supra,* 461 U.S. at 150, 103 S.Ct. at 1692, *see also id.* at 142, 150–52, 103 S.Ct. at 1687, 1691–92. Therefore, the contours of any rights affected by this balancing test can only become unclear if there are competing interests to be balanced.

Here, however, defendants do not contend that the conduct of harassment alleged by plaintiff (and supported with evidence sufficient for a reasonable jury to find that such conduct occurred) served any government interest. *See* Defendants' Memo at 19–22.[29] *Id.* Defendants' contentions notwithstanding, the court finds that (1) a reasonably competent public official in either of the positions held by defendant Smith and Thomas would have understood that the State of New Hampshire had no legitimate interest in discouraging good

---

**29.** Rather, defendants effectively deny that the alleged conduct occurred. The court notes that such disputes are properly resolved at trial and

not on motions for summary judgment. *See* Rule 56(c), Fed.R.Civ.P.

faith PAB appeals, *see* RSA § 21–I:58 I (Supp.1991) (as discussed *supra*); and (2) a reasonably competent public official in the position held by defendant Thomas would have understood that the State of New Hampshire had no legitimate interest in discouraging the filing of lawsuits based on federal causes of action. *See* U.S. Const. art. VI, cl. 2 (as discussed *supra*).

Accordingly, the court finds that a reasonably competent public official in either of the positions held by defendants Smith and Thomas would have understood that, under the *Connick–Pickering* balancing test, plaintiff's expression in the manner described *supra* was protected by the First Amendment against conduct of harassment such as plaintiff alleges.[30] Therefore, under *Harlow v. Fitzgerald, supra,* and *Anderson v. Creighton, supra,* neither defendant Smith nor defendant Thomas is entitled to qualified immunity.

### 3. Conclusion

For the reasons stated herein, the court denies defendant's motion for summary judgment with respect to: (1) plaintiff's First Amendment claims under section 1983 against defendants Smith and Thomas based on their conduct in response to plaintiff's filing of the PAB appeal; (2) plaintiff's First Amendment claim under section 1983 against defendant Thomas based on her conduct in response to plaintiff's filing of the instant action; (3) plaintiff's claims of intentional infliction of emotional distress against defendants Smith and Thomas; and (4) plaintiff's claims of intentional interference with contractual relations against defendants Smith and Thomas. Similarly, the court grants defendants' motion for summary judgment with respect to: (1) all claims against defendant the State of New Hampshire Treasury Department; (2) plaintiff's First Amendment claim under section 1983 against defendant Smith based on his conduct in response to plaintiff's filing of the instant action; (3) plaintiff's Fourteenth Amendment deprivation of property claims under section 1983 against defendants Smith and Thomas; (4) plaintiff's Fourteenth Amendment deprivation of liberty claims under section 1983 against defendants Smith and Thomas; and (5) plaintiff's claims against defendants Smith and Thomas as contained in Counts II, III, and V of the complaint.

SO ORDERED.

---

**30.** Given this finding, the court declines to address the question whether the alleged conduct of harassment occurred during the course of the performance of discretionary functions.